STATE OF NEW JERSEY, PLAINTIFF, v. ISADORE
EISENSTEIN, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. RICHARD F.
POWELL, DEFENDANT.

Essex County Court
Law Division

Decided November 20, 1950.

*Mr. Edward Gaulkin,* for the State of New Jersey.

*Mr. John E. Toolan,* for the defendant Isadore Eisenstein.

*Mr. Samuel I. Kessler,* for the defendant Richard F. Powell.

FRANCIS, J. C. C. The defendants Eisenstein and Powell were indicted by the Essex County Grand Jury under *R. S.* 2:157–4 for false swearing. Two such indictments were returned against Eisenstein, and one against Powell. Both defendants have moved to dismiss the indictments on the grounds that: (1) they do not charge the commission of any crime; (2) the two of them which are drawn so as to take advantage of *R. S.* 2:157–5 do not set forth such clearly contradictory statements as to justify the charge of false swearing; (3) they are vague and uncertain; and (4) they do not set forth facts to show that the notary public named therein was authorized to administer the oath to the defendants and was acting within his authority in so doing.

So far as the last ground urged (4) is concerned the indictments follow the language of the statute. The act says that any person who shall willfully swear falsely "before any person authorized by virtue of any provision of law of this state to administer an oath and acting within his authority" shall be guilty of false swearing. The indictments recite these words almost *verbatim* and consequently are sufficient to withstand an attack based upon the failure to allege the details of the notary's authority and the facts showing that he acted within his authority. (*State v. Harris,* 132 *N. J. L.* 54 (*Sup.*

*Ct.* 1944); *State v. Joseph L. Sigretto & Sons,* 127 *N. J. L.* 578, 581 (*Sup. Ct.* 1942); *State v. Ellenstein,* 121 *N. J. L.* 304, 325 (*Sup. Ct.* 1938)). If the details are desired by the defendants avenues of discovery are open to them. (*State v. Sigretto, supra, p.* 581; *Rule* 2:4-14.)

The first three grounds can be considered as one. Basically the contention is that the statements in the three counts of one of the Eisenstein indictments, and in the single count in the Powell indictment, are not so "unequivocally contrary" "that the utterance of the one required the immediate negation of the other."

All three of the cases referred to above proclaim the doctrine that an indictment will not be dismissed except on the "clearest and plainest ground." Likewise they set down the test of validity to be whether or not it sets forth "with reasonable certainty all of the facts necessary to render the offense judicially apparent."

In applying the test here an examination must be made of the specific testimony given by the defendants on the different occasions to determine if they appear sufficiently opposed to each other to "render the offense judicially apparent."

In the first count of indictment No. 475 against Eisenstein a number of inconsistencies appear in his two testimonial utterances with respect to a certain check. On July 24, 1950, Eisenstein swore that one F. Baxter, who he thought lived in Fairdale, Delaware, is a producer, presumably of milk, and that he gave Baxter a check for $253.69 for milk. He cashed this check for Baxter. Then he said that one Sylvia Gray gave him some cash and he gave her the check.

On August 16, 1950, he swore that Baxter was a carpenter and builder in Long Branch, New Jersey, and that he worked for Sylvia Gray. On being shown the same check bearing endorsements ostensibly made by F. Baxter and Sylvia Gray and asked what Sylvia Gray "got the money for" he said "I liked her looks, that is why I gave it to her."

Further, the plain conclusion from the first testimony about cashing the check for Baxter is that it was endorsed by him.

However, on the second occasion Eisenstein said he endorsed Baxter's name on it.

Was Baxter a milk producer or did he work for Sylvia Gray? Was he a milk producer or a carpenter and builder? If he was a carpenter and builder and worked for her or worked for her in some other capacity was he given $253.69 for milk? Did Sylvia Gray come into possession of this check because Eisenstein cashed it for Baxter with money he obtained from her, and then turned it over to her, or did he give the check to her because he liked her looks? If the latter statement was intended to be humorous or contemptuous of the questioner the setting in the indictment gives it a more serious connotation. Who endorsed this check—Baxter or Eisenstein?

██ The recitation of these inconsistencies is sufficient to describe and to charge the offense of false swearing under the first count of the indictment.

The second count was conceded at the argument of the motion to contain an adequate charge of false swearing.

The third count relates primarily to assertions with relation to another check for $1,237.80. It was dated June 23, 1950, and drawn to Malta Heating & Plumbing Company. On July 24, 1950, Eisenstein said it was for work done at his plant in Milton, Delaware. The plain implication is that the full sum was for such work. However, on August 16, 1950, he said that he cashed the check and gave some of the money to Malta Heating & Plumbing Company. This was done because "he did some work for me and he got some of that money * * *." The inconsistency thus apparent is sufficient to sustain the indictment.

██ The second false swearing indictment sets forth certain testimony he gave under oath on July 24, 1950, with respect to a certain telephone call and conversation had therein. Then it is charged clearly and unequivocally that no such telephone call took place and that no such conversation ever occurred during any such telephone call. The violation of the statute is clearly spelled out.

 The Powell indictment sets forth two rather substantial portions of his testimony given on different occasions. Study and comparison make it obvious that an inconsistency exists and seemingly a willful one. On July 18, 1950, the basic inquiry related to the selection of certain dairies for inspection and to the person who made the selection. While the reference was to a paper list, designated S-2, the question manifestly related to the dairies appearing therein and to the source of their selection for inspection. Powell's answers were designed to establish that a Mr. Connolly made the selection but more particularly that the defendant Goodman (in the conspiracy indictments) had no hand in it.

On the later date, October 5, 1950, he plainly indicated that Goodman was the active force in the designation of the dairies to be inspected.

It is argued that the prosecutor's effort is to confuse the physical paper S-2 with the contents thereof and that Powell was truthful when he said he did not receive S-2 or other paper containing a list of dairies from Goodman. And it is contended that because the prosecutor may have been thinking in terms of contents of lists as distinguished from the paper S-2 itself, he has as mistaken an impression of the answers as Powell had or may have had of the questions. If this is so such explanation may be made at the trial. At this time there glares through the statements on the one occasion that Goodman was free from participation in the selection of the dairies and that he had an active hand in it on the other. Such inconsistency renders the indictment adequate.

Under the circumstances all motions addressed to these three indictments will be denied.